■ In the Matter of the Claim of GERARD J. KRAUS, Claimant, v WEGMANS FOOD MARKETS, INC., Appellant. WORKERS' COMPENSATION BOARD, Respondent. [67 NYS3d 702]—

Pritzker, J. Appeals (1) from a decision of the Workers' Compensation Board, filed February 3, 2014, which ruled, among other things, that claimant sustained a causally-related accidental psychiatric injury and established his claim for workers' compensation benefits, (2) from a decision of said Board, filed June 5, 2014, which denied the employer's application for reconsideration and/or full Board review, (3) from a decision of said Board, filed July 6, 2015, which ruled that claimant did not violate Workers' Compensation Law § 114-a, and (4) from a decision of said Board, filed November 2, 2016, which, among other things, denied the employer's application for a rehearing.

Claimant worked as a workers' compensation claims adjustor for Wegmans Food Markets, Inc. (hereinafter the employer), a food market chain, from 2000 to 2011. In 2010, the employer adopted an internal policy regarding its treatment of potential workers' compensation no-fault benefit claims in which it distinguished between claims arising from motor vehicle accidents and those arising out of the use or operation of a motor vehicle. Under the internal policy, claims that arose out of a motor vehicle accident were automatically assigned to a workers' compensation claims service provider that administered the employer's no-fault workers' compensation claims. Claims

that involved the use or operation of a motor vehicle, however, were not assigned to such service provider unless an injured employee specifically inquired about whether he or she might be entitled to additional no-fault benefits.[1] In defiance of the employer's direction to strictly adhere to this policy, claimant was inconsistent in doing so, and, shortly after it was instituted, he began receiving threatening communications from the unionized employee drivers. In September 2011, claimant's employment was terminated as a result of performance issues, including his disparate application of the no-fault policy.

In February 2012, claimant applied for workers' compensation benefits alleging a psychiatric occupational disease due to work-related "stress, death threats, threats of physical violence [and] accusations of dishonesty by claimants." The employer controverted the claim. A Workers' Compensation Law Judge (hereinafter WCLJ), in a February 2013 decision, as amended by an amended reserved decision filed in May 2013, established the claim in the form of posttraumatic stress disorder (hereinafter PTSD), with associated conditions including depression, anxiety, panic disorder and insomnia. The employer sought administrative review of the WCLJ's decision, and claimant filed a rebuttal. In April 2013, the employer submitted a supplemental application for review, or sur-rebuttal, addressing a newly filed medical report.[2] In a February 2014 decision, the Workers' Compensation Board ruled, as relevant here, that claimant sustained a causally-related accidental injury. The Board also found that, contrary to the employer's claim, claimant's equivocal responses to extensive questioning regarding medical history from at least 10 years ago did not constitute a false statement knowingly made for the purpose of obtaining workers' compensation benefits in violation of Workers' Compensation Law § 114-a. With regard to the supplemental arguments contained in the employer's April 2013 sur-rebuttal submitted to the Board, the Board denied review of the sur-rebuttal because it was filed after the 30-day period set forth in 12 NYCRR 300.13 (a) and therefore untimely. The employer then sought reconsideration and/or full Board review of the Board's February 2014 decision, and, in a June 2014 decision, the Board denied that request.

Subsequent hearings ensued regarding, among other things,

1. Not only was this policy discontinued, but the employer paid out approximately $3 million to resolve no-fault issues.

2. This medical report was that of Michael Baer, a clinical and neuropsychologist who evaluated claimant in August 2012, incident to a separate workers' compensation claim with a different employer.

alleged consequential injuries, and, in a July 2014 decision, the WCLJ found that claimant violated Workers' Compensation Law § 114-a by knowingly exaggerating or feigning symptoms of memory loss and agoraphobia during his testimony for the purpose of obtaining compensation and disqualified claimant from receiving future wage-replacement benefits. Upon administrative review, the Board reversed in a July 2015 decision, finding that claimant had never alleged that he could not leave his house and that, to the extent that he exaggerated his memory loss symptoms, a finding of a Workers' Compensation Law § 114-a violation is not supported when the exaggeration of symptoms resulted from his condition that was either caused or exacerbated by a work-related injury.

In September 2015, the employer filed an application for Board review seeking review and rehearing of the WCLJ's May 2013 amended reserved decision and the WCLJ's July 2014 decision. Specifically, the employer sought a rehearing on the issue of compensability with the testimony of claimant excluded. In a November 2016 decision, the Board, among other things, denied the employer's request for a rehearing, finding that the issues challenged by the employer had already been fully adjudicated by the Board and that the employer had not raised any new issues or presented any new or additional evidence that was not already considered by the Board. The employer now appeals from the February 2014, June 2014, July 2015 and November 2016 decisions.[3]

Initially, the Board's determination that claimant sustained a compensable work-related psychiatric injury in the form of PTSD is supported by substantial evidence. For a mental injury premised on work-related stress to be compensable, "a claimant must demonstrate that the stress that caused the claimed mental injury was greater than that which other similarly situated workers experienced in the normal work environment" (*Matter of Guess v Finger Lakes Ambulance*, 28 AD3d 996, 997 [2006] [internal quotation marks and citation omitted], *lv denied* 7 NY3d 707 [2006]; *see Matter of Cook v East Greenbush Police Dept.*, 114 AD3d 1005, 1005-1006 [2014], *lv denied* 23 NY3d 904 [2014]). This inquiry presents a factual question for the Board to resolve, and its finding will not be disturbed when supported by substantial evidence (*see Matter of Brittain v*

---

3. The employer raises no argument in its appellate brief regarding the denial of its request for reconsideration and/or full Board review, and we therefore deem the employer's appeal from the June 2014 decision to be abandoned (*see Matter of Siennikov v Professional Grade Constr., Inc.*, 137 AD3d 1440, 1441 n 1 [2016]).

*New York State Ins. Dept.*, 107 AD3d 1340, 1341 [2013]; *Matter of Kopec v Dormitory Auth. of State of N.Y.*, 44 AD3d 1230, 1231 [2007]). Moreover, "[t]he fact that a contrary conclusion also may be supported by substantial evidence does not afford a ground . . . to set aside the Board's determination" (*Matter of Young v Pentax Precision Instrument Corp.*, 57 AD3d 1323, 1324 [2008]). Finally, "the fact that the injury relates to a preexisting condition will not preclude the claimant from obtaining relief where it is demonstrated that the claimant's employment exacerbated the condition in such a manner as to cause a disability which did not previously exist" (*Matter of Ochsner v New Venture Gear*, 273 AD2d 715, 716 [2000] [internal quotation marks and citations omitted], *appeal dismissed* 96 NY2d 731 [2001]; *see Matter of Harrington v Whitford Co.*, 302 AD2d 645, 646 [2003]).

The quantum of proof adduced at the hearings, including testimony from coworkers, revealed an extremely stressful and untenable situation, of which claimant bore the brunt, primarily resulting from the employer's questionable no-fault policy. As a result of that internal policy, claimant, who was responsible for handling no-fault claims, testified that he started receiving "dozens and dozens" of phone calls from the unionized employee drivers threatening him and calling him a "liar and a cheat." After receiving these calls for months, claimant began mental health treatment and was prescribed an antidepressant. Claimant also started sweating and having chest pains and feelings of doom and continuing panic. These feelings continued after claimant's termination; indeed, at the time of the hearing, claimant testified that he still felt that his life was in jeopardy. Claimant testified that as a result of incidents that occurred after his termination, he became afraid to go outside and even filed several police reports. One of these police reports indicated that most of the shrubs around his home were pulled out of the ground, one being thrown against his house, and several boards had been bent away near his storage shed.

Claimant's testimony, that the drivers who were impacted by the employer's no-fault policy were upset with him for enforcing it, was corroborated by multiple witnesses, including fellow employees. A human resources coordinator for the employer testified that the relationship between claimant and the drivers became "adversarial." Claimant's supervisor testified that claimant "felt threatened by a coworker within the department all the time" and that an employee was barred from the building due to his abuse of claimant. Claimant's supervisor also

testified regarding an incident involving a particular driver who was upset about the status of his no-fault benefits and claimant feeling very threatened by this particular driver. This particular driver admitted in his testimony that he was "really upset" with claimant and called him "dishonest" and "deceiving." The employer's claims manager testified that claimant handled complex claims and that claimant felt he was in a very difficult situation due to the employer's no-fault policy.

The medical testimony, while not uniform, also provided substantial evidence supporting the Board's determinations. Clifford Jacobsen, claimant's psychiatrist, testified that claimant was 100% disabled from his PTSD diagnosis "that's work related secondary to these threats and his fear that he was going to be attacked and beaten and killed." Michael Kuttner, claimant's treating psychologist, generally concurred with Jacobson as to causation and diagnosis. In contrast, Rajendra Singh, a psychiatrist who conducted an August 2012 independent psychiatric examination of claimant, opined that claimant's current disability was not causally related to his alleged harassment and his current symptoms were instead related to an underlying psychosis, but he agreed that claimant's stressful interactions may have made his illness worse.

Here, substantial evidence supports the Board's determination that claimant's psychiatric condition is an accidental injury caused by the psychological trauma and stress experienced at work while the no-fault policy was in effect. Indeed, claimant's testimony, which the Board was free to credit in whole or in part, reflects that the no-fault policy resulted in contentious relations with the drivers and that threats were made against claimant both while employed by the employer and after his termination. The testimony also demonstrates that the stress caused to claimant was greater than that experienced by similarly situated workers in the normal work environment (*see Matter of Haynes v Catholic Charities*, 135 AD3d 1267, 1268 [2016]; *Matter of Brittain v New York State Ins. Dept.*, 107 AD3d at 1341-1342; *compare Matter of Guess v Finger Lakes Ambulance*, 28 AD3d at 997). To the extent that the record suggests that claimant had a preexisting psychiatric condition in the form of anxiety, the testimony from claimant, as well as the testimony from his treating psychiatrist and psychologist, demonstrates that the work-related stress that he experienced, at a minimum, exacerbated his psychiatric state to the degree that he now presents (*see Matter of Harrington v Whitford Co.*, 302 AD2d at 646-647; *Matter of Ochsner v New Venture Gear*, 273 AD2d at 716). To the extent that the

employer challenges the Board's determination that claimant did not violate Workers' Compensation Law § 114-a, the employer failed to adequately develop its argument as to this issue in its brief, thereby precluding meaningful review.[4] In any event, such argument is lacking in merit.

Further, the Board did not improperly decide any new issues or consider new evidence in its July 2015 decision finding that claimant did not violate Workers' Compensation Law § 114-a.[5] The Board considered the medical report of Michael Baer, who reported, among other things, that claimant "unconsciously exaggerates his illness and physiological pain and looks like he is consciously malingering—he is not." Based in part on Baer's report, the Board ultimately found that claimant had not made a false statement for the purpose of obtaining workers' compensation benefits. While Baer's medical report should not have been received and considered by the Board in connection with this matter absent an affidavit (see 12 NYCRR 300.13 [b] [1] [iii]), the report did not raise a new issue before the Board that it had not already had the opportunity to consider (see generally Matter of Paez v Lackman Culinary Servs., 140 AD3d 1462, 1464 [2016]). Additionally, the employer failed to preserve any objection to the Board's consideration of the medical report insofar as the employer, once it became aware of the report, failed to raise in its April 2013 sur-rebuttal any objection to it or otherwise timely request an opportunity to cross-examine Baer (cf. Matter of McKenzie v UJA-FED, 47 AD3d 1181, 1181-1182 [2008]; Matter of McKenzie v Revere Copper Prods., 39 AD3d 1035, 1037 [2007]).

Similarly, there is no merit to the employer's contention that the Board, in its February 2014 decision, abused its discretion in declining to consider the employer's April 2013 sur-rebuttal as untimely. The employer filed its application for review of the February 2013 WCLJ decision in March 2013 and claimant filed a rebuttal in April 2013. Later in April 2013, in response to claimant's rebuttal, the employer filed its sur-rebuttal or supplemental application for review. Inasmuch as the operative regulation in effect at the time of the underlying proceedings does not authorize a party to file a sur-rebuttal, but merely provides time frames for filing applications for review and cor-

---

**4.** Notably, the Board made this finding in both its February 2014 decision and July 2015 decision. The employer, however, does not articulate which of these two, or both, decisions it is challenging.

**5.** The employer, in its brief, fully developed its appeal as to this procedural issue, and, therefore, unlike the substantial evidence issue related to Workers' Compensation Law § 114-a, it was not abandoned on appeal.

responding rebuttals to such applications (see 12 NYCRR former 300.13 [a], [b]), the Board properly exercised its discretion and rejected the employer's April 2013 sur-rebuttal (compare Matter of Bordenet v Maines Paper & Food Serv., 50 AD3d 1276, 1276 [2008]). Moreover, to the extent that the Board construed the employer's April 2013 sur-rebuttal as an initial application for review, such application was required to be filed within 30 days of notice of filing of the February 2013 decision of the WCLJ, together with proof of service upon all other parties in interest (see 12 NYCRR former 300.13 [a]). Because it was filed beyond this 30-day period, the Board did not abuse its discretion in denying the sur-rebuttal.

Finally, the Board properly denied the employer's September 2015 application for a rehearing on the issue of compensability in which it requested that the Board exclude and reject the entirety of claimant's allegedly unreliable testimony. The employer's application, based in part upon the findings set forth in Baer's medical report, is premised upon the argument that claimant's mental health issues make him inherently incredible, prone to exaggeration and prone to unconsciously feigning injury, and, therefore, the Board's establishment of the claim could not be sustained on the basis of claimant's testimony. Inasmuch as the Board already expressly addressed Baer's medical report and the credibility of claimant's testimony in light of that report in its July 2015 decision, the employer failed to set forth a valid ground warranting rehearing or reopening of the claim (see 12 NYCRR 300.14 [a]). Therefore, the Board's denial of the employer's request for rehearing did not constitute an abuse of discretion (see 12 NYCRR 300.14 [c]; Matter of Chen v Five Star Travel of NY Inc., 150 AD3d 1505, 1506 [2017]).

Peters, P.J., Garry, Clark and Aarons, JJ., concur. Ordered that the decisions are affirmed, without costs.