Matter of Karam v Rensselaer County Sheriff's Dept. (2018 NY Slip Op 08390)





Matter of Karam v Rensselaer County Sheriff's Dept.


2018 NY Slip Op 08390


Decided on December 6, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 6, 2018

525286

[*1]In the Matter of the Claim of JAMES J. KARAM, Appellant,
v
RENSSELAER COUNTY SHERIFF'S DEPARTMENT, Respondent. WORKERS' COMPENSATION BOARD, Respondent.

Calendar Date: October 12, 2018

Before: Garry, P.J., Devine, Clark, Aarons and Pritzker, JJ.


Law Office of Patrick Sorsby PLLC, Albany (Patrick Sorsby of counsel), for appellant.
Sullivan Keenan Oliver & Violando, LLP, Albany (John M. Oliver of counsel), for Rensselaer County Sheriff's Department, respondent.



MEMORANDUM AND ORDER
Garry, P.J.
Appeals (1) from a decision of the Workers' Compensation Board, filed August 15, 2016, which ruled that claimant did not sustain a causally-related mental injury and denied his claim for workers' compensation benefits, and (2) from a decision of said Board, filed November 22, 2016, which denied claimant's request for reconsideration and/or full Board review.
In August 2012, claimant left his employment as a Lieutenant and the Commander of Internal Affairs with the Rensselaer County Sheriff's Department. He later applied for workers' compensation benefits alleging, as pertinent here, that he had sustained work-related mental injuries arising from his stressful work environment. Following a hearing in 2013, the Workers' Compensation Law Judge (hereinafter the first WCLJ), found that a valid claim had been established for work-related posttraumatic stress disorder and major depressive disorder. The Workers' Compensation Board later rescinded the decision and returned the case to the trial calendar for further development of the record on the issue of causation.
To this end, claimant submitted six deposition transcripts taken in a related federal case that he had commenced against the County of Rensselaer. The County submitted claimant's deposition transcript (Karam v County of Rensselaer, US Dist Ct, ND NY, Jan. 4, 2016, D'Agostino, J.). In January 2016, a different WCLJ (hereinafter the second WCLJ) disallowed the claim without holding a further hearing, finding that claimant had not been subjected to stress that was greater than that of a normal work environment resulting in any psychiatric condition. In August 2016, the Board affirmed this decision. In November 2016, claimant's request for reconsideration and/or full Board review was denied. Claimant appeals from both the August 2016 and November 2016 decisions.
Initially, we find no merit in claimant's contentions that the case was improperly reassigned to the second WCLJ, and that he was entitled to a new hearing thereafter. Workers' Compensation Law § 20 requires that a hearing "continue before the same referee until a final determination awarding or denying compensation" is made (Workers' Compensation Law § 20 [1]). However, "the statute does not require that the same WCLJ preside over any and all hearings that may be conducted in conjunction with a given claim" (Matter of Prather v Amerada Hess Corp., 95 AD3d 1633, 1634 [2012]). The Board may reassign a case as a result of a WCLJ's "absence, inability or disqualification to act" (Workers' Compensation Law § 20 [1] [emphasis added]). Here, the January 2016 decision noted that, "due to absence, [the first WCLJ] is unavailable to write the reserved decision." This satisfied the statutory mandate; there was no requirement that the hearing be renewed or repeated (see Workers' Compensation Law § 20; compare Matter of Prather v Amerada Hess Corp., 95 AD3d at 1634). Claimant's further argument that the failure to conduct a new hearing resulted in the inability to properly assess his credibility is unavailing. The resolution of conflicting evidence and credibility determinations are within the province of the Board, which is not bound by a WCLJ's determination (see Matter of Elias-Gomez v Balsam View Dairy Farm, 162 AD3d 1356, 1358 [2018]; Matter of Dixon v Almar Plumbing, 111 AD3d 1230, 1231 [2013]; Matter of Nassar v Masri Furniture & Mdse., Inc., 91 AD3d 1022, 1022-1023 [2012]).
A mental injury arising from work-related stress is compensable. However, to get benefits, "'a claimant must demonstrate that the stress that caused the claimed mental injury was greater than that which other similarly situated workers experienced in the normal work environment'" (Matter of Kraus v Wegmans Food Mkts., Inc., 156 AD3d 1132, 1134 [2017], quoting Matter of Guess v Finger Lakes Ambulance, 28 AD3d 996, 997 [2006]). "Whether the stress experienced by a claimant is more than that normally encountered is a factual question for the Board to resolve, and its finding will not be disturbed when supported by substantial evidence" (Matter of Cook v East Greenbush Police Dept., 114 AD3d 1005, 1006 [2014] [citations omitted], lv denied 23 NY3d 904 [2014]). Upon review, we defer to the Board's credibility assessments (see Matter of Elias-Gomez v Balsam View Dairy Farm, 162 AD3d at 1358; Matter of Quigley v Concern for Ind. Living, 146 AD3d 1185, 1186 [2017]).
Claimant had worked for the Rensselaer County Sheriff's Department for 24 years. As the Commander of Internal Affairs, he was responsible for, among other things, conducting internal investigations of civilian complaints lodged against staff and internal complaints of misconduct. Claimant was employed in a correctional setting. He alleged that during his tenure, he was subjected to disparaging comments and conduct by his supervisors and coworkers related to his Lebanese and Arab heritage. He specifically alleged that the Captain and the Undersheriff had engaged in such conduct. In his deposition, the Undersheriff acknowledged that he had made comments to claimant about his facial hair, that he could be "put on the watch list" and had made other references to "being a towel head or camel jockey." He asserted that these comments were made in jest, and that such off-color jokes were commonly exchanged between employees without regard to their ethnicity or national origin. The Undersheriff admitted to having sent claimant an email containing a sexually explicit video about the Taliban, but alleged that claimant had requested it. Responding to claimant's allegation that the Undersheriff had given claimant an Arab headdress, the Undersheriff testified that he kept a collection of hats in his office, and that it was claimant who took the headdress.
The Captain similarly admitted in his deposition that he had made comments about claimant "parking his carpet or parking his camel" and had sent claimant an email containing a joke about Arab people. He explained that these incidents were just "banter between friends." Claimant had asserted that he and the Captain were not friends; in direct contrast, the Captain testified that they socialized outside of work and, indeed, claimant was the best man at his wedding. Another witness supported this testimony in part, describing having overheard claimant and the Captain "bantering" in a friendly manner.
The Board found claimant to be incredible. Claimant admitted to making jokes about the Captain's Polish heritage, physical appearance and lack of wealth. Claimant acknowledged in [*2]his testimony that he also engaged in rough humor, and did so "at times and just as much as everybody else," although he later disavowed and attempted to retract his statement to this effect. The Board noted that claimant never made any formal complaints regarding any of these incidents over the roughly 20-year period that they allegedly occurred. Further, claimant did not reference any of these incidents in his initial claim for workers' compensation benefits.
As to claimant's injuries, his treating physician, Richard Ovens, diagnosed him with posttraumatic stress disorder and major depressive disorder. Ovens further opined in his deposition testimony that claimant's work environment resulted in these psychiatric conditions. Significantly, however, Ovens' detailed report from 2012 — when claimant first filed for benefits — makes no mention of the incidents at issue, and instead emphasizes claimant's traumatic experiences related to his interactions with inmates as a primary cause of his conditions. Although we find the disparaging statements and conduct described abhorrent and unbecoming of a public official, under the circumstances presented and in deferring to the Board's credibility assessments, we find no basis to disturb the determination (see Matter of Novak v St. Luke's Roosevelt Hosp., 148 AD3d 1509, 1510-1511 [2017]; Matter of Guillo v NYC Hous. Auth., 115 AD3d 1140, 1140-1141 [2014]; Matter of Pecora v County of Westchester, 13 AD3d 916, 917 [2004]).
Finally, we find no merit in claimant's contention that the Board's denial of his application for reconsideration and/or full Board review was arbitrary and capricious. "[T]o obtain review or reconsideration, claimant must demonstrate that newly discovered evidence exists, that there has been a material change in condition, or that the Board improperly failed to consider the issues raised in the application for review in making its initial determination" (Matter of Amaker v City of N.Y. Dept. of Transp., 144 AD3d 1342, 1343 [2016] [internal quotation marks and citation omitted]; see Matter of Brasher v Sam Dell's Dodge Corp., 159 AD3d 1234, 1235 [2018], appeal dismissed 32 NY3d 1012 [2018]). Contrary to claimant's assertions, the Board's unanimous and thorough decision demonstrates that it scrutinized the record evidence and issues posed. We find no abuse of discretion in the denial of claimant's application. Claimant's remaining arguments have been rendered academic by our decision.
Devine, Clark, Aarons and Pritzker, JJ., concur.
ORDERED that the decisions are affirmed, without costs.