Matter of Clancy v Park Line Asphalt Maintenance (2021 NY Slip Op 00612)





Matter of Clancy v Park Line Asphalt Maintenance


2021 NY Slip Op 00612


Decided on February 4, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 4, 2021

531186

[*1]In the Matter of the Claim of Celia Clancy, Appellant,
v
Park Line Asphalt Maintenance et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date: January 12, 2021

Before: Garry, P.J., Egan Jr., Lynch, Aarons and Pritzker, JJ.


Geoffrey Schotter, New York City, for appellant.
Tanisha S. Edwards, State Insurance Fund, New York City (Katherine Mason-Horowitz of counsel), for Park Line Asphalt Maintenance and another, respondents.



Egan Jr., J.
Appeal from a decision of the Workers' Compensation Board, filed September 6, 2019, which ruled that claimant did not sustain an occupational disease and denied her claim for workers' compensation benefits.
In or around 2000, claimant was diagnosed with bilateral carpal tunnel syndrome and herniated cervical discs. Thereafter, she received Social Security disability benefits due to her neck condition, which, at that time, was considered to be permanently and totally disabling. In 2003, she underwent the first of many surgeries on her neck, and, in 2006, she underwent surgery to address her carpal tunnel syndrome. Claimant stopped receiving disability benefits sometime in 2006, when she began to work for the employer at full duty. From that point on, claimant worked as an office manager, a position that required, among other things, between six and seven hours of typing per day, five days per week. During her employment, claimant continued to receive treatment for her conditions and underwent several additional surgeries. This included a neck surgery in 2007, after which claimant was cleared to return to work, initially at light duty, with restrictions prohibiting heavy lifting and prolonged periods of sitting or standing without stretching — accommodations that her position already intrinsically afforded. She also underwent surgery on her right hand in 2011, neck surgeries in 2013 and 2014 and a surgery on her elbow in 2017, after each of which she was cleared to return to work at light duty for a period of weeks before she resumed full duty. According to claimant, she began noticing an overall worsening of her symptoms sometime in 2016, in that her neck pain had begun to radiate down her arms and cause tingling, numbness and spasms in her hands. Claimant, while at full duty, stopped working in June 2018 after being advised by a medical professional, allegedly for the first time, that her job could be the cause of her worsening symptoms, and she was ultimately terminated in October 2018 once her accrued leave was exhausted. She filed a claim for workers' compensation benefits in July 2018, asserting that she suffered injuries to her hands and neck as the result of an occupational disease that aggravated her preexisting conditions.
Numerous physicians who had treated claimant over the years were deposed, along with a consultant hired by the employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier). Those of claimant's physicians who provided an opinion regarding as much were of the position that her repetitive work activities exacerbated her preexisting conditions, causing disability, whereas the carrier's consultant, who was unaware of claimant's specific job duties, opined that her symptoms were profound and due to longstanding compressive neuropathy unrelated to her work. Ultimately, a Workers' Compensation Law Judge disallowed the claim on the ground that claimant's preexisting conditions [*2]were neither dormant nor nondisabling at the time that she started working for the employer and, thus, could not form the basis for a claim of occupational disease based on exacerbation thereof. Upon administrative review, the Workers' Compensation Board upheld the disallowance, concluding that, although claimant was indeed able to perform all of the duties of her particular employment, she was not "fully capable of performing all kinds of work" given the restrictions placed upon her regarding lifting and sitting/standing. Thus, in the Board's view, claimant had at least some degree of disability while she worked for the employer, precluding her claim for occupational disease based on exacerbation of a dormant and nondisabling preexisting condition. Claimant appeals.
It is not disputed that claimant's conditions all predate her employment. In order to establish an occupational disease based upon aggravation of a preexisting condition, it must be demonstrated that the condition was "dormant and nondisabling" and that a distinctive feature of the claimant's employment exacerbated the condition in such a manner as to cause a disability (Matter of Tipping v Orthopedic Surgeons of Long Is., 68 AD3d 1224, 1225-1226 [2009]; see Matter of Kraus v Wegmans Food Mkts, Inc., 156 AD3d 1132, 1135 [2017]; Matter of Pulos v Asplundh Tree, 29 AD3d 1073, 1074 [2006]). Importantly, "[t]he dispositive issue . . . is not whether [the] claimant's preexisting condition caused [him or] her pain but, rather, whether [the] claimant's employment acted upon [his or] her condition in such a manner as to cause a disability that did not previously exist" (Matter of Jarvis v Stewart Airport Diner, 271 AD2d 816, 817 [2000]; see Matter of Cocco v New York City Dept. of Transp., 266 AD2d 634, 634 [1999]; Matter of Perez v Pearl-Wick Corp., 56 AD2d 239, 241 [1977]).
As the Board acknowledged, there is nothing in the record to suggest that claimant's preexisting conditions prevented her from performing any assigned job duty. There is similarly no evidence that the temporary restrictions placed upon her in weeks immediately following her various surgeries actually impacted her work at all. Thus, it cannot be said that claimant's preexisting conditions were disabling, in a compensation sense, prior to the date of disablement alleged (see Matter of Kuczkowski v Bethlehem Steel Corp., 90 AD2d 612, 613 [1982], affd 58 NY2d 946 [1983]; see also Matter of Pulos v Asplundh Tree, 29 AD3d at 1074; Matter of Cea v Combined Life Ins. Co. of N.Y., 134 AD2d 696, 697 [1987]; Matter of Lemery v Flintkote Co., 105 AD2d 538, 539 [1984]; compare Matter of Hollander v Valor Clothers, 91 AD2d 731, 732 [1982]). The fact that claimant was generally symptomatic in the months prior to her return to work does not warrant a different result (see Matter of Jarvis v Stewart Airport Diner, 271 AD2d at 817).
Garry, P.J., Lynch, Aarons and Pritzker, JJ., concur.
ORDERED that the decision is reversed[*3], without costs, and matter remitted to the Workers' Compensation Board for further proceedings not inconsistent with this Court's decision.