Matter of Stefanik v Gardner (2025 NY Slip Op 00355)

Matter of Stefanik v Gardner

2025 NY Slip Op 00355

Decided on January 23, 2025

Appellate Division, Third Department

Lynch, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 23, 2025

CV-23-1145

[*1]In the Matter of Scott Stefanik, Petitioner,
v
Colleen Gardner, as Executive Deputy Comptroller, Respondent.

Calendar Date:December 11, 2024

Before: Garry, P.J., Lynch, Fisher, Powers and Mackey, JJ.

Baker Leshko Saline & Drapeau, LLP, White Plains (Anthony C. Saline of counsel), for petitioner.
Letitia James, Attorney General, Albany (Frederick A. Brodie of counsel), for respondent.

Lynch, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent denying petitioner's applications for accidental and performance of duty disability retirement benefits.
Petitioner, who began working as a police officer in the City of Yonkers, Westchester County in January 2011, filed applications for accidental disability and performance of duty disability retirement benefits based upon an injury he allegedly sustained during incidents that occurred on September 16, 2011. The underlying incident began when petitioner stopped his patrol vehicle upon observing a large fight at a school and slipped and fell after exiting the vehicle. Petitioner recounted that he used his right arm to break the fall and dislocated his right shoulder, which popped back into place when he got up. He then grabbed one of the individuals engaged in the fight, who threw a punch at him. Petitioner responded by performing an "arm-bar maneuver" and handcuffed the suspect, dislocating his right shoulder a second time. Petitioner thereafter underwent arthroscopic surgery to his right shoulder. After he recovered, petitioner continued to work as a police officer performing light duty until he resigned in June 2014. Petitioner claimed that he was permanently incapacitated from the performance of his duties as a result of the right shoulder injury.
The New York State and Local Police and Fire Retirement System denied petitioner's application for accidental disability retirement benefits upon the ground that the 2011 incident did not constitute an accident within the meaning of Retirement and Social Security Law § 363, and subsequently denied his application for performance of duty disability retirement benefits under Retirement and Social Security Law § 363-a, finding that his incapacitation was not the result of the 2011 event. Following a hearing and redetermination, the Hearing Officer denied petitioner's applications. As for petitioner's accidental disability application, the Hearing Officer concluded that the incident occurred during the course of and was an inherent risk of petitioner's routine employment duties and, hence, did not constitute an accident. With regard to petitioner's performance of duty application, the Hearing Officer concluded that although he was permanently incapacitated from the performance of his duties, it was not the result of the 2011 incident but, rather, stemmed from a nonwork-related injury and surgery to his right shoulder in 2008, from which he never fully recovered. Respondent upheld the Hearing Officer's decision, and petitioner thereafter commenced this CPLR article 78 proceeding to challenge that determination.
We turn first to the denial of petitioner's application for performance of duty disability retirement benefits. Pertinent in that regard, petitioner was required to prove that he was permanently incapacitated from the performance of his [*2]job duties as a "natural and proximate result of . . . a disability that was sustained in such service" (Matter of Mozdziak v DiNapoli, 231 AD3d 1215, 1216 [3d Dept 2024] [internal quotation marks and citation omitted]; see Retirement and Social Security Law §§ 363 [a] [1]; 363-c [b] [1]). Respondent "is vested with the exclusive authority" to weigh conflicting medical evidence in this regard and to "credit the opinion of one medical expert over another" (Matter of Solarino v DiNapoli, 171 AD3d 1434, 1435 [3d Dept 2019] [internal quotation marks and citations omitted]; see Matter of Stancarone v DiNapoli, 219 AD3d 1649, 1650 [3d Dept 2023]). "Our review of [respondent's] determination is limited to ascertaining whether it is supported by substantial evidence" (Matter of Collins v DiNapoli, 57 AD3d 1148, 1148 [3d Dept 2008] [citations omitted]; see Matter of Sestito v DiNapoli, 161 AD3d 1499, 1501 n [3d Dept 2018]).
The medical evidence presented in this case included testimony and a written report from Edward Toriello, an orthopedic surgeon retained by the Retirement System. Toriello, who examined petitioner on September 13, 2016 and reviewed his medical records, ultimately concluded that petitioner was permanently incapacitated from performing his duties as a police officer due to his right shoulder injury. Toriello opined that the injury was not the result of the 2011 incident but, rather, was attributable to a nonwork injury sustained in 2008, before petitioner became a police officer, in which he dislocated his right shoulder, requiring surgical repair of a labral tear. Concluding that petitioner never fully recovered from the 2008 injury and remained susceptible to recurrent dislocations, Toriello determined that the 2011 accident was "not the competent-producing cause of [petitioner's] present condition" but was instead "an acute exacerbation of a preexisting condition."
Petitioner's medical evidence consisted of testimony from Eric Spencer, an orthopedic surgeon who performed the labral tear surgery on petitioner in 2008. Spencer averred that "an explanation for [petitioner's] current shoulder instability was the labral tear" and that, although the surgery was successful, his shoulder "was n[ever] completely normal" again, as someone who experiences a shoulder dislocation "is always . . . at increased risk of injury down the line with . . . vigorous physical activity." Nevertheless, Spencer made clear that petitioner recovered "extremely well" from his 2008 surgery and that he had no concerns about his ability to perform his line-of-duty responsibilities as a police officer, opining that he was "basically back to normal" in 2009 and 2010. Although Spencer did not offer a definitive opinion on causation or the degree to which the 2008 injury and surgery contributed to the 2011 injury, he "believe[d] [petitioner's] injury in 2011 was more likely because he had the injury in 2008 compared to if he had never dislocated his shoulder before." [*3]Petitioner, for his part, testified during the hearing that he fully recovered from the 2008 shoulder injury and had passed his physical agility examination without issue prior to becoming a police officer in January 2011, which included performing 33 push-ups. He also completed strenuous training exercises while at the police academy with "no problem," confirming that he would not have been able to do them after the injury he sustained in September 2011.
Emphasizing both doctors' opinions that petitioner's right shoulder was never 100% normal after the 2008 injury and surgery, the Hearing Officer concluded that petitioner's "double dislocation on September 16, 2011 . . . was not the result of his actions that day" — a conclusion accepted by respondent. This determination was based upon an incorrect understanding of the law. As noted by petitioner, " 'when a preexisting dormant [condition] is aggravated by an accident, thereby causing a disability that did not previously exist, the accident is responsible for the ensuing disability' " (Matter of Studdert v New York State Comptroller, 163 AD3d 1343, 1344-1345 [3d Dept 2018], quoting Matter of Portmore v New York State Comptroller, 152 AD3d 945, 946 [3d Dept 2017]).
Respondent argues that this rule does not apply because petitioner's "preexisting condition was symptomatic, not dormant" insofar as petitioner's right shoulder never fully recovered from the 2008 injury. We are unpersuaded. The term "dormant" simply means "[i]nactive" or "suspended" (Black's Law Dictionary [12th ed 2024], dormant). There is no requirement that a preexisting condition be fully resolved to be considered dormant — a conclusion supported by the Court of Appeals' statement in Matter of Tobin v Steisel (64 NY2d 254 [1985]) that "an accident which produces injury . . . by aggravating a preexisting condition is a cause of that injury" (id. at 259; see Matter of Clancy v Park Line Asphalt Maintenance, 191 AD3d 1088, 1090-1091 [3d Dept 2021], lv dismissed 37 NY3d 1087 [2021]). Petitioner indisputably suffered a right shoulder injury in 2008 that required surgery and rendered him susceptible to future shoulder dislocations. Although both doctors agreed that petitioner's shoulder was never completely normal after the 2008 injury, the evidence established that the 2008 injury did not interfere with petitioner's ability to both qualify for and perform his duties as a police officer, i.e., he was fully asymptomatic immediately prior to the incident. Petitioner gave detailed testimony demonstrating that his shoulder "popped out" on two occasions on September 16, 2011 as a result of incidents that occurred during the performance of work-related duties. In these circumstances, respondent's determination that petitioner's disability was not the natural and proximate result of the September 2011 incidents is not supported by substantial evidence (see Matter of Covelli v DiNapoli, 104 AD3d 1002, 1003 [3d Dept 2013]; Matter of Britt v DiNapoli[*4], 91 AD3d 1102, 1104 [3d Dept 2012]). Accordingly, so much of respondent's determination as denied petitioner's application for performance of duty disability retirement benefits under Retirement and Social Security Law § 363-a must be annulled.
We reach the opposite conclusion regarding petitioner's application for accidental disability retirement benefits. To obtain such benefits, petitioner was required to establish that his disability "arose from an accident within the meaning of the Retirement and Social Security Law" (Matter of Bornholz v DiNapoli, 225 AD3d 1079, 1080 [3d Dept 2024] [internal quotation marks and citations omitted]; see Retirement and Social Security Law § 363 [a] [1]). An accident in this context means a "sudden, fortuitous mischance, unexpected, out of the ordinary, and injurious in impact" (Matter of Bodenmiller v DiNapoli, ___ NY3d ___, ___, 2024 NY Slip Op 06234, *2 [Dec. 12, 2024] [internal quotation marks and citations omitted])."An event which is 'a risk inherent' in the work performed is not an 'accident' for purposes of [accidental disability retirement] benefits" (Matter of Bodenmiller v DiNapoli, ___ NY3d at ___, 2024 NY Slip Op 06234, *2, quoting Matter of Kelly v DiNapoli, 30 NY3d 674, 683 [2018]; see Matter of Compagnone v DiNapoli, ___ NY3d ___, ___, 2024 NY Slip Op 06235, *1 [Dec. 12, 2024]).
Petitioner testified that responding to and breaking up fights was a routine part of his duties as a police officer on patrol. On this record, there is substantial evidence to support respondent's determination that petitioner's injuries occurred during the course of "an ordinary employment duty of a police officer" (Matter of Castellano v DiNapoli, 197 AD3d 1478, 1480 [3d Dept 2021] [internal quotation marks and citation omitted]), and were occasioned by "inherent risk[s] of those regular duties" (Matter of Compagnone v DiNapoli, ___ NY3d at ___, 2024 NY Slip Op at *2 [internal quotation marks, brackets and citation omitted]).
Garry, P.J., Fisher, Powers and Mackey, JJ., concur.
ADJUDGED that the determination is modified, without costs, by annulling so much thereof as denied petitioner's application for performance of duty disability retirement benefits; petition granted to that extent and matter remitted to respondent for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.