Matter of Croom v New York State Dept. of Corr. & Community Supervision
2026 NY Slip Op 03709
June 11, 2026
Appellate Division, Third Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

In the Matter of the Claim of Jennifer Croom, Appellant,
v
New York State Department of Corrections and Community Supervision et al., Respondents. Workers' Compensation Board, Respondent.

Decided and Entered:June 11, 2026
CV-24-1886
Calendar Date: April 23, 2026
Before: Clark, J.P., Aarons, Pritzker, Mcshan And Ryba, JJ.

Bronk & Somers PC, Rochester (Mark C. Somers of counsel), for appellant.
David F. Wertheim, State Insurance Fund, Albany (Rudolph Rosa Di Sant of counsel), for New York State Department of Corrections and Community Supervision and another, respondents.
Letitia James, Attorney General, New York City (Nina M. Sas of counsel), for Workers' Compensation Board, respondent.

[*1]
Aarons, J.
Appeal from a decision of the Workers' Compensation Board, filed October 18, 2024, which ruled, among other things, that claimant did not sustain a compensable injury and disallowed her claim for workers' compensation benefits.
In 2023, claimant worked as a correction sergeant at the Albion Correctional Facility. One of the incarcerated individuals in the facility, who claimant had met over a decade earlier while working at a juvenile residential center, experienced a medical emergency. Claimant and the facility nurse took the incarcerated individual to the hospital unit, where her condition deteriorated and she became unresponsive. Despite the efforts of claimant and others who performed cardiopulmonary resuscitation (hereinafter CPR) and used an automated defibrillator on the incarcerated individual, as well as those of the paramedics who subsequently arrived, the incarcerated individual died. Claimant remained in the area to, among other things, be questioned as part of the investigation into the death.
Claimant sought mental health treatment after the incident occurred and received a diagnosis of posttraumatic stress disorder (hereinafter PTSD). In connection therewith, she filed a claim for workers' compensation benefits and stopped working in November 2023. The employer and its workers' compensation carrier controverted the claim and, following further proceedings, a Workers' Compensation Law Judge established the claim for work-related PTSD. Upon administrative review, the Workers' Compensation Board issued an October 2024 decision in which it disagreed and disallowed the claim. Claimant appeals.
We affirm. At the outset, we reject claimant's contention that remittal is necessary so that the Board may consider the applicability of a recently enacted statutory provision that prohibits it from "disallow[ing] a claim by a covered employee upon a factual finding that the stress was not greater than that which usually occurs in the normal work environment where a claim for [PTSD], acute stress disorder or major depressive disorder resulting from work-related stress is filed," where certain criteria are met (Workers' Compensation Law § 10 [3] [c], as added by L 2025, ch 79, § 1).FN1 The legislation creating that provision provided that it would not take effect until June 4, 2025, almost four months after its approval and eight months after the October 2024 issuance of a decision by the Board that is "final and conclusive" unless it is disturbed on this appeal (Workers' Compensation Law § 23; see L 2025, ch 79, §§ 2, 3; L 2024, ch 546, § 2). A statute will ordinarily have only prospective effect absent proof of a contrary intent, and the gap in time between the approval of Workers' Compensation Law § 10 (3) (c) and its effective date is inconsistent with a legislative intent to apply it to claims already adjudicated by the Board (see Matter of Jeter v Poole, 43 NY3d 241, 251-252 [2024]; People v Galindo, 38 NY3d 199, 207 [2022]; Matter of Deutsch [*2]v Catherwood, 31 NY2d 487, 489-490 [1973]; cf. Matter of Mealing v Hills, 132 AD2d 759, 760-761 [3d Dept 1987], lv denied 70 NY2d 612 [1987] [statutory amendment applied to pending claim before the Board]). As we cannot say that the Legislature intended to "impos[e] new duties with respect
to . . . [Board] determinations already completed," we conclude that Workers' Compensation Law § 10 (3) (c) is inapplicable to this matter and remittal is unnecessary (Matter of Jeter v Poole, 43 NY3d at 252; cf. Matter of McMillan v Town of New Castle, 162 AD3d 1425, 1427 [3d Dept 2018] [Board should have considered change in law that took effect prior to motion for reconsideration before it]).
As for the merits of the Board's decision, the general rule at the time it was rendered was that "emotional stress-induced psychological injury was considered accidental only if the claimant established that the stress they experienced in the workplace was greater than that which other similarly situated workers experienced in the normal work environment" (Matter of McLaurin v New York City Tr. Auth., ___ NY3d ___, ___, 2025 NY Slip Op 06529, *2 [2025] [internal quotation marks and citations omitted]; see Matter of Leggio v Suffolk County Police Dept., 96 NY2d 846, 847 [2001]). Workers' Compensation Law § 10 (3) (b) carved out an exception to that requirement, barring the Board from disallowing claims from specified first responders who sustained a psychological injury from "work-related stress incurred in a work-related emergency" upon the ground "that the stress was not greater than that which usually occurs in the normal work environment."FN2 Claimant argued that she was a "person certified to provide medical care in emergencies" entitled to the exception created by section 10 (3) (b) and that, even if she was not, she had demonstrated exposure to exceptional work-related stress. The Board rejected both arguments, and we examine each in turn.
The Board's position that Workers' Compensation Law § 10 (3) (b) does not apply to correction officers is not entitled to deference "[b]ecause the issue presented is one of pure statutory interpretation" (Matter of Sanchez v Jacobi Med. Ctr., 182 AD3d 121, 124 [3d Dept 2020]; see Matter of Walsh v New York State Comptroller, 34 NY3d 520, 524 [2019]). That said, the statute is limited by its terms to claims by "a police officer or firefighter subject to [Workers' Compensation Law § 30], or emergency medical technician, paramedic, or other person certified to provide medical care in emergencies, or [an] emergency dispatcher" (Workers' Compensation Law § 10 [3] [b] [emphasis added]). Correction officers are not named, "a court cannot amend a statute by inserting words that are not there, and an inference must be drawn that what is omitted or not included was intended to be omitted and excluded" (Matter of Matzell v Annucci, 183 AD3d 1, 5 [3d Dept 2020] [internal quotation marks and citations omitted]; see Matter of Town of Riverhead [*3]v New York State Bd. of Real Prop. Servs., 5 NY3d 36, 42-43 [2005]).
The structure of the statutory text — emphasized above — precludes us from agreeing with claimant that correction officers are "other person[s] certified to provide medical care in emergencies" (Workers' Compensation Law § 10 [3] [b]). "Under the rule of construction requiring courts to limit general language of a statute by specific phrases which have preceded it," our interpretation of the catch-all reference is limited by the named positions of emergency medical technician and paramedic that immediately precede it (People v Bartkow, 96 NY2d 770, 772 [2001] [internal quotation marks and citation omitted]). In light of that limitation — and without diminishing the responsibilities of correction officers — a person whose employment may require training or certification in, and the occasional performance of, first aid, CPR and similar lifesaving interventions, is not, without more, a "person certified to provide medical care in emergencies" within the meaning of the statute (Workers' Compensation Law § 10 [3] [b]; compare Public Health Law §§ 3001 [5]; 3002 [2]; 3011 [7]; 10 NYCRR 800.3, 800.6 [c]; 800.15). Accordingly, as the statute does not expressly or by implication extend to correction officers, we agree with the Board that "correction[ ] officers are not included in the statutory definition of those who are covered by [Workers' Compensation Law] § 10 (3) (b)" (Employer: County of Westchester, 2019 WL 118204, *6, 2019 NY Wrk Comp LEXIS 4, *16 [Jan. 2, 2019, WCB No G126 4973]).
Turning to whether claimant demonstrated that the stress she experienced on the job was greater than that experienced by similarly situated individuals in the normal work environment, the Board's resolution of that factual question will be upheld if supported by substantial evidence in the record (see Matter of Rivenburg v County of Albany, 187 AD3d 1282, 1284 [3d Dept 2020]; Matter of Kraus v Wegmans Food Mkts., Inc., 156 AD3d 1132, 1134-1135 [3d Dept 2017]). Claimant escorted the incarcerated individual to the facility hospital and, along with several employees, performed CPR on the individual as her condition worsened. That said, both claimant and a correction lieutenant testified that providing lifesaving measures to incarcerated individuals was among claimant's job duties. Claimant also acknowledged that dealing with medical emergencies in the facility was not uncommon, and testimony established that deaths had previously occurred there. Though claimant knew the incarcerated individual in connection with her previous employment, she stated that her working relationship with that individual was no different from her relationships with other incarcerated individuals at the facility. In view of the foregoing, "substantial evidence supports the Board's decision that claimant did not sustain a compensable injury" (Matter of Rivenburg v County of Albany, 187 AD3d at 1284; see Matter of Guess v Finger [*4]Lakes Ambulance, 28 AD3d 996, 997-998 [3d Dept 2006], lv denied 7 NY3d 707 [2006]). Thus, it will not be disturbed.
Clark, J.P., Pritzker, McShan and Ryba, JJ., concur.
ORDERED that the decision is affirmed, without costs.

Footnotes

Footnote 1
We note that this case appears to mark the first occasion in which we have been asked to address the impact Workers' Compensation Law § 10 (3) (c) has upon matters already decided by the Board, but from which an appeal to this Court was pending, when it took effect (cf.Matter of Wallace v New York City Sch. Support Servs., Inc., 247 AD3d 1401, 1403 n [3d Dept 2026]).

Footnote 2
We note that the Legislature acted to remove the language referencing specified first responders from Workers' Compensation Law § 10 (3) (b) in 2024 but, before the change took effect, restored the original language as part of the 2025 legislation that created Workers' Compensation Law § 10 (3) (c) (see L 2025, ch 79, §§ 1, 3; L 2024, ch 546, § 1).