■ In the Matter of THOMAS J. ASHLEY, Petitioner, v THOMAS P. DINAPOLI, as State Comptroller, Respondent. [949 NYS2d 526]—

Peters, P.J.

Petitioner retired from the Eastchester Police Department in Westchester County in 2004. His 2003 applications for accidental and performance of duty disability retirement benefits as a result of cardiac and orthopedic issues that arose during his employment with the police department were initially denied by the New York State and Local Police and Fire Retirement System. Following an administrative hearing, a Hearing Officer again denied his applications, concluding, among other things, that, although petitioner was incapacitated from the performance of his duties, neither his cardiac nor his orthopedic disabilities were the natural and proximate result of incidents sustained during his service. Respondent adopted the Hearing Officer's findings and conclusions. Petitioner thereafter commenced this proceeding, which has been transferred to this Court.

Petitioner first contends that the Retirement System failed to rebut the statutory presumption that his heart ailments were incurred in the performance of his duties as a police officer (*see* Retirement and Social Security Law § 363-a [2]). As there is no dispute that petitioner is entitled to the presumption here, the burden lay with the Retirement System to rebut it by "present[ing] evidence of risk factors along with an expert opinion that excludes [petitioner's] employment as a causative factor"

(*Matter of Walsh v DiNapoli*, 83 AD3d 1278, 1279 [2011] [internal quotation marks and citations omitted]; *see Matter of Harrison v DiNapoli*, 84 AD3d 1691, 1692 [2011]; *Matter of Larberg v Hevesi*, 17 AD3d 979, 980 [2005], *lv denied* 5 NY3d 707 [2005]; *Matter of Skae v Regan*, 208 AD2d 1028, 1029 [1994]).

Edward Brown, a cardiologist who examined petitioner and reviewed his medical records, identified as risk factors petitioner's abnormal cholesterol pattern, hypertension and history of obesity, and concluded that petitioner's cardiac infirmities were the result of "[a]therosclerosis accelerated by an abnormal lipid pattern and hypertension." According to Brown, petitioner's work as a police officer played no role in the development of his heart disease. In light of Brown's testimony and the other evidence in the record demonstrating the long-standing existence of the risk factors relied on by Brown, we find that the record contains sufficient competent evidence to rebut the statutory presumption (*see Matter of Harrison v DiNapoli*, 84 AD3d at 1692; *Matter of Marinelli v DiNapoli*, 82 AD3d 1347, 1348 [2011]; *Matter of Larberg v Hevesi*, 17 AD3d at 980-981; *Matter of Krupinski v McCall*, 302 AD2d 676, 677 [2003]). The existence of evidence in the record supporting a contrary conclusion presented a conflict that was within respondent's authority to resolve (*see Matter of Harrison v DiNapoli*, 84 AD3d at 1692; *Matter of Marinelli v DiNapoli*, 82 AD3d at 1349; *Matter of Krupinski v McCall*, 302 AD2d at 677).

Petitioner next asserts that respondent erred in determining that an injury he sustained in July 1998 was not the result of an accident within the meaning of Retirement and Social Security Law § 363. "[T]o be eligible for accidental disability retirement benefits, the disabilities must result from a sudden, fortuitous, out of the ordinary and unexpected event that does not result from an activity undertaken in the performance of regular or routine employment duties, and [respondent] has the exclusive authority to determine whether an accident occurred" (*Matter of Carroll v DiNapoli*, 95 AD3d 1498, 1498-1499 [2012] [internal quotation marks and citations omitted]; *see Matter of Lorenzo v DiNapoli*, 67 AD3d 1311, 1312 [2009]). According to petitioner, he experienced neck pain and some lower back pain as he "twisted around to get out [of a police car]." Inasmuch as the risks associated with exiting a police car are "inherent in the performance of [an officer's] routine duties," and petitioner has offered no evidence indicating that his exit was accompanied by anything out of the ordinary, we decline to disturb respondent's determination (*Matter of Lorenzo v DiNapoli*, 67 AD3d at 1312).

Finally, we find respondent's determination that petitioner's orthopedic maladies were not the natural and proximate result of a work-related incident to be supported by substantial evidence (*see Matter of Murphy v New York State Comptroller*, 92 AD3d 1022, 1022 [2012]; *Matter of Sweeney v New York State Comptroller*, 86 AD3d 893, 893 [2011]). Where, as here, the record contains conflicting medical evidence, it is within respondent's province to resolve the conflicts " 'and to credit one expert's opinion over that of another, so long as the credited expert articulates a rational and fact-based opinion founded upon a physical examination and review of the pertinent medical records' " (*Matter of Ragno v DiNapoli*, 68 AD3d 1342, 1344 [2009], quoting *Matter of Freund v Hevesi*, 34 AD3d 950, 950 [2006]; *see Matter of Mazzei v DiNapoli*, 90 AD3d 1458, 1459 [2011]).

Here, respondent credited the testimony and opinion of John Mazella, an orthopedic surgeon who examined petitioner just prior to his retirement and reviewed his medical history. Mazella opined that a February 1996 accident where petitioner slid on leaves and snow while checking a vacant house and injured his back[1] was not a "competent producing cause of [petitioner's] present condition," and concluded that petitioner's "present condition [was] the result of ongoing natural degenerative process of aging." In reaching his conclusion, Mazella found particularly relevant that petitioner returned to work within a week following the accident without any significant medical treatment and that he worked for many years afterwards without major difficulty (*compare Matter of Britt v DiNapoli*, 91 AD3d 1102, 1103-1104 [2012]). In addition, Mazella concluded that petitioner suffered no significant trauma on the date of the accident. Similarly, petitioner testified that, following the accident, he was brought to the emergency room where X rays were taken—revealing no problems—and he was discharged with instructions only to take ibuprofen. An orthopedic surgeon that petitioner consulted immediately after the accident agreed, and petitioner received no further medical care for any orthopedic issues for over a year and a half.[2] Consequently, we find that, although an asymptomatic preexisting back condition may have been aggravated by petitioner's February 1996 accident,

1. The Retirement System concedes that this was an accident within the meaning of Retirement and Social Security Law § 363.

2. Notably, although the burden was on petitioner to prove his entitlement to the retirement benefits (*see Matter of Murphy v New York State Comptroller*, 92 AD3d at 1022), petitioner failed to offer an expert witness to testify before the Hearing Officer, instead relying on his own testimony and the submitted records.

the evidence in the record supports the expert's conclusion that the aggravation was only temporary and was not a cause of petitioner's ultimate disability (*see Matter of Orsini v McCall*, 221 AD2d 690, 691 [1995]; *see also Matter of Mazzei v Hevesi*, 45 AD3d 1103, 1104 [2007]; *Matter of Tucker v McCall*, 262 AD2d 916, 917 [1999]; *compare Matter of Britt v DiNapoli*, 91 AD3d at 1103-1104; *Matter of Sanchez v New York State & Local Police & Fire Retirement Sys.*, 208 AD2d 1027, 1028 [1994]). Accordingly, although there is evidence in the record that could have supported a contrary result, we defer to respondent's resolution of the conflicting evidence and decline to disturb the determination (*see Matter of Ragno v DiNapoli*, 68 AD3d at 1344).

We have considered the parties' remaining arguments and find them to be either rendered academic or without merit.

Lahtinen, Spain, Malone Jr. and Garry, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.