Matter of Lenci v DiNapoli (2022 NY Slip Op 06306)

Matter of Lenci v DiNapoli

2022 NY Slip Op 06306

Decided on November 10, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 10, 2022

534768
[*1]In the Matter of Marc Lenci, Petitioner,
v
Thomas P. DiNapoli, as State Comptroller, Respondent.

Calendar Date:October 11, 2022

Before:Garry, P.J., Clark, Aarons, Pritzker and Fisher, JJ.

Schwab & Gasparini, PLLC, White Plains (Warren Roth of counsel), for petitioner.
Letitia James, Attorney General, Albany (Sarah L. Rosenbluth of counsel), for respondent.

Pritzker, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent denying petitioner's applications for accidental disability retirement benefits and disability retirement benefits.
In 2013, petitioner, a police officer, filed an application for accidental disability retirement benefits alleging that he was permanently disabled as a result of injuries sustained at work on September 6, 2012, February 17, 2013 and May 8, 2013. In a November 2014 determination, the New York State and Local Police and Fire Retirement System denied petitioner's application, finding that, although petitioner is incapacitated and unable to perform his duties, his disability is not the natural and proximate result of the alleged accidents sustained in service and, moreover, that the incidents of September 2012 and May 2013 did not constitute accidents within the meaning of Retirement and Social Security Law § 363. In 2015, petitioner filed a second application for accidental disability retirement benefits alleging that he was permanently disabled as a result of an alleged accident that occurred at work on December 15, 2013. The Retirement System denied petitioner's second application, finding once again that, although petitioner is incapacitated from the performance of his duties, his disability is not the natural and proximate result of an accident sustained in service.
At the requested hearings and redetermination that followed, petitioner withdrew the September 2012 incident from consideration, and the Retirement System conceded that the February 2013 and December 2013 incidents constituted accidents. Thus, the sole issues at the hearing distilled to whether the May 2013 incident qualified as an accident, whether petitioner's permanent and disabling right knee injury was the natural and proximate result of an accident sustained while in service and whether petitioner's cervical spine injury was permanently incapacitating and, if so, whether it was caused by an accident sustained while in service. Following the hearings, the Hearing Officer upheld the denial of petitioner's applications, finding that petitioner failed to establish that the May 2013 incident was an accident, that his disabling right knee injury was the natural and proximate result of the February 2013 or December 2013 accidents and that he was permanently incapacitated as a result of his neck injury. Respondent adopted the Hearing Officer's findings and conclusions, and this CPLR article 78 proceeding ensued.
As an initial matter, respondent concedes that the May 2013 incident constitutes an accident within the meaning of the Retirement and Social Security Law. Inasmuch as respondent did not reach the issue of whether petitioner's permanent disability to his right knee was the natural and proximate result of the May 2013 accident, we remit the matter for that purpose (cf. Matter of Arroyo v DiNapoli, 195 [*2]AD3d 1290, 1292 [3d Dept 2021]).
Turning to the balance of the issues raised on appeal, there is no dispute that the February 2013 and December 2013 incidents constituted accidents within the meaning of the Retirement and Social Security Law and that petitioner is permanently incapacitated from the performance of his duties as a result of his disabling right knee condition. "Nevertheless, to be eligible for accidental disability retirement benefits, petitioner's incapacitation must be the natural and proximate result of an accident sustained while in service" (Matter of Whipple v New York State & Local Retirement Sys., 126 AD3d 1282, 1283 [3d Dept 2015] [internal quotation marks, brackets and citations omitted], lv denied 26 NY3d 912 [2015]; see Retirement and Social Security Law § 363 [a] [1]). Thus, petitioner bore the burden of demonstrating that he was incapacitated from the performance of duty as the natural and proximate result of either the February 2013 or December 2013 accident (see Matter of Somuk v DiNapoli, 145 AD3d 1339, 1341 [3d Dept 2016]; Matter of Ripp v New York State & Local Police & Fire Retirement Sys., 136 AD3d 1143, 1144 [3d Dept 2016]). "Where substantial evidence supports respondent's decision, it will not be disturbed" (Matter of Whipple v New York State & Local Retirement Sys., 126 AD3d at 1283 [citations omitted]; see Matter of Messina v New York State & Local Employees' Retirement Sys., 102 AD3d 1068, 1068 [3d Dept 2013], lv denied 21 NY3d 855 [2013]). "Where, as here, the evidence from the medical experts is conflicting, respondent has the authority to resolve such conflicts and to credit one expert's opinion over that of another, so long as the credited expert articulates a rational and fact-based opinion founded upon a physical examination and review of the pertinent medical records" (Matter of Amedio v Hevesi, 45 AD3d 1004, 1005 [3d Dept 2007] [internal quotation marks, brackets, ellipsis and citations omitted], appeal dismissed 10 NY3d 744 [2008]; see Matter of Mazzei v Hevesi, 45 AD3d 1103, 1104 [3d Dept 2007]).
Petitioner testified that, during his tenure as a police officer from 1998 to 2014, he was injured on approximately 10 occasions and that he had surgery on his right knee in 1998 and 1999. He also acknowledged that he previously injured his neck in April 2005 during a motor vehicle accident and that he subsequently sought treatment for his neck including treatment from a chiropractor. At the time of the February 2013 accident, petitioner, while ascending basement stairs during an investigation of a suspected burglary, sustained injuries to, among other things, his right knee and neck when the basement door suddenly sprung open and hit him in the back of his head, resulting in petitioner being pushed down a couple of stairs. As for the December 2013 accident, petitioner testified that he sustained injuries to, among other things, his right knee and neck when he slipped and fell on black ice. Petitioner [*3]explained that, as a result of these accidents and the resulting disabling injuries to his right knee and neck, he is unable to perform the duties of a police officer.
Mack Sullivan, a physician who has treated claimant since 2007 and who has also treated claimant's right knee and cervical spine, found that claimant's disabling right knee and neck injuries were both caused by the February 2013 accident and then exacerbated by the May 2013 and December 2013 accidents. Sullivan further opined that petitioner's neck injury renders him permanently incapacitated from performing his duties as a police officer because petitioner experiences numbness and tingling, and has considerable strength deficits, in his upper extremities. Sullivan admitted, however, that he previously treated claimant's neck in March 2012 when petitioner struck a telephone pole with his police cruiser and that he previously treated petitioner's right knee since as early as July 2008 following surgery to repair microfractures in petitioner's right knee.
In contrast to Sullivan's findings, John Killian, a board-certified orthopedic surgeon who, on behalf of the Retirement System, conducted an orthopedic examination of petitioner in July 2014 and reviewed petitioner's extensive medical history and related records, concluded that neither the February 2013 nor the December 2013 accident was the natural and proximate cause of claimant's impairment of his right knee. In support of his conclusions, Killian noted that his review of diagnostic imaging studies of petitioner's right knee dating back to 2008 revealed the presence of osteoarthritis and a tear in petitioner's meniscus as well as evidence of significant degenerative arthritis in the right knee predating the accidents in question. Killian also noted that petitioner has had three arthroscopic surgical procedures performed on his right knee including the removal of articular cartilage.
Killian further opined that petitioner's neck injury was not permanently incapacitating because his physical examination of petitioner revealed no restriction of petitioner's cervical range of motion or palpable muscle spasms, and petitioner reported no complaints of pain associated with normal cervical motions. Killian also noted that his review of a number of diagnostic imaging studies of petitioner's neck reflected that there was no significant nerve compression. Moreover, as found by the Hearing Officer, the record, including petitioner's testimony, reflects that, following the February 2013 accident, petitioner finished the workday and returned to working full time with additional overtime hours in the weeks following the incident (see Matter of Somuk v DiNapoli, 145 AD3d at 1341). Furthermore, following the December 2013 accident, petitioner missed only two days of work prior to resuming his duties as a police officer (see id.). In view of the foregoing, substantial evidence supports respondent's determination that petitioner failed to demonstrate [*4]that the permanent incapacity to his right knee was the natural and proximate result of the February 2013 or December 2013 accidents and that he is permanently incapacitated due to an injury to his cervical spine (see Matter of Ripp v New York State & Local Police & Fire Retirement Sys., 136 AD3d at 1144; Matter of Mazzei v Hevesi, 45 AD3d at 1104; Matter of Steinmann v Hevesi, 18 AD3d 1011, 1011-1012 [3d Dept 2005], lv denied 5 NY3d 710 [2005]). Although Sullivan's medical testimony and findings could support a contrary determination, respondent was entitled to credit the findings of Killian, who presented a rational and fact-based medical opinion based upon his extensive review of petitioner's medical records, an examination of petitioner and a review of petitioner's work history and related documentation (see Matter of Whipple v New York State & Local Retirement Sys., 126 AD3d at 1283). Accordingly, we find no reason to disturb respondent's determination.
Garry, P.J., Clark, Aarons and Fisher, JJ., concur.
ADJUDGED that the determination is modified, without costs, by annulling so much thereof as denied petitioner's application for accidental disability retirement benefits with respect to the May 2013 incident; matter remitted to respondent for further proceedings not inconsistent with this Court's decision; and, as so modified, confirmed.