Matter of Stancarone v DiNapoli (2023 NY Slip Op 04803)

Matter of Stancarone v DiNapoli

2023 NY Slip Op 04803

Decided on September 28, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:September 28, 2023

532658
[*1]In the Matter of Joseph Stancarone, Petitioner,
v
Thomas P. DiNapoli, as State Comptroller, Respondent.

Calendar Date:September 12, 2023

Before:Egan Jr., J.P., Lynch, Reynolds Fitzgerald, Ceresia and Fisher, JJ.

Schwab & Gasparini, PLLC, White Plains (Warren J. Roth of counsel), for petitioner.
Letitia James, Attorney General, Albany (Kate H. Nepveu of counsel), for respondent.

Fisher, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent denying petitioner's application for performance of duty disability retirement benefits.
Petitioner, a police officer, filed an application for performance of duty disability retirement benefits in July 2012, alleging that he was permanently incapacitated therefrom due to injuries sustained to his neck and back after falling down a set of stairs in November 2011. The application was denied, and petitioner requested a hearing and redetermination. At the conclusion of the hearing that followed, during the course of which petitioner, his treating physician and the physician who evaluated petitioner at the request of the New York State and Local Retirement System appeared and testified, the Hearing Officer upheld the denial, finding that petitioner failed to demonstrate that he was permanently incapacitated from the performance of his duties. Respondent adopted the Hearing Officer's findings and conclusions, prompting petitioner to commence this CPLR article 78 proceeding to challenge respondent's determination.
As the applicant, petitioner bore the burden of establishing that he was permanently incapacitated from the performance of his duties as a police officer "as the natural and proximate result of a disability . . . sustained in such service" (Retirement and Social Security Law § 363-c [b] [1]; see Matter of Harder v DiNapoli, 213 AD3d 1101, 1102 [3d Dept 2023]; Matter of Clarke v DiNapoli, 187 AD3d 1286, 1287 [3d Dept 2020]). Respondent "is vested with the exclusive authority to determine all applications for retirement benefits" (Matter of Rosario v New York State Comptroller, 178 AD3d 1270, 1271 [3d Dept 2019]) and, in connection therewith, resolve conflicting medical evidence and credit one expert's opinion over that of another (see Matter of Solarino v DiNapoli, 171 AD3d 1434, 1435 [3d Dept 2019]; Matter of Ellrodt v DiNapoli, 169 AD3d 1128, 1129 [3d Dept 2019]). Respondent's determination in this regard, if supported by substantial evidence in the record as a whole, will not be disturbed (see Matter of Rosario v New York State Comptroller, 178 AD3d at 1271; Matter of Keitel v DiNapoli, 154 AD3d 1047, 1048 [3d Dept 2017]).
The Retirement System's expert, a board-certified orthopedic surgeon, testified that he examined petitioner in February 2017, at which time petitioner complained of, as relevant here, back pain that traveled to his lower right extremity 75% of the time and variable pain and numbness involving his right foot. In preparation for such examination, the Retirement System's expert reviewed petitioner's job duties and various medical records, including the results of numerous imaging studies and four electrodiagnostic tests. The expert noted that all of petitioner's imaging studies were normal. Although acknowledging that certain of petitioner's electrodiagnostic [*2]tests showed abnormal results, revealing "lumbosacral nerve root dysfunction involving the mid to lower lumbar spine" and "acute right-side L5 radiculopathy and possible left-side S1 radiculopathy with peripheral neuropathy," the expert testified that his physical examination of petitioner revealed "no objective signs of any abnormality" with respect to petitioner's back or neck. Specifically, the expert testified that, upon examining petitioner, he did not detect any neck spasms, which was "significant, because that finding indicated that there was no active nerve root compression or irritation." An axial compression test, which involved applying downward pressure to petitioner's head and neck region, also was negative, further indicating "that there was no clinical evidence for any nerve root compression." The expert's examination of petitioner's back was similarly unremarkable, revealing that the spinal column was aligned, that there was normal sensation in both lower extremities and that no active mid- or lower-back spasms were detected. Such examination, which was conducted approximately one year after the January 2016 electrodiagnostic study, "did not confirm any acute right-side L5 radiculopathy, and there was no evidence of any possible left-side S1 radiculopathy . . . or any peripheral neuropathy." Indeed, the expert testified that, during the course of "the hands-on exam, [petitioner] made no complaints with regard to [his] neck or lower back." All of this, the Retirement System's expert opined, led him to conclude that petitioner was "clinically stable [and] orthopedically intact with no evidence of any neurological impairment with regard to [petitioner's] neck or lower back."
Petitioner's treating physician, who was board certified in physical medicine, rehabilitation and pain management, and who had last examined petitioner in March 2016, testified that petitioner was permanently incapacitated from the performance of his duties as a police officer due to "complaints of ongoing symptomatology in [petitioner's] lower back, and to some degree, his neck." In so concluding, petitioner's physician relied in large measure upon the fact that petitioner's symptoms remained unresolved despite undergoing various treatment modalities, as well as the results of the January 2016 electrodiagnostic study, which the physician deemed to be consistent with petitioner's continuing complaints of back and right leg pain.
The conflicting medical testimony presented a credibility issue for respondent to resolve and, despite his familiarity with petitioner, the opinion rendered by petitioner's treating physician was not entitled to greater weight (see Matter of Clarke v DiNapoli, 187 AD3d at 1288; Matter of Solarino v DiNapoli, 171 AD3d at 1437). Inasmuch as the opinion of the Retirement System's expert was "a rational fact-based opinion formed upon a physical examination of . . . petitioner and a review of pertinent medical records" (Matter of Harder v DiNapoli[*3], 213 AD3d at 1102 [internal quotation marks and citations omitted]), respondent was free to credit such opinion over that of petitioner's treating physician (see id.; Matter of Solarino v DiNapoli, 171 AD3d at 1437). Accordingly, we find that respondent's determination is supported by substantial evidence.
Finally, petitioner contends that the Hearing Officer erred in admitting into evidence a report from another physician who evaluated petitioner at the behest of the Retirement System but who, due to his subsequent passing, did not testify at the hearing. Although the deceased physician's report indeed is referenced in the Hearing Officer's decision, it is apparent from a review thereof that the contested report was not determinative. Nevertheless, "hearsay is admissible as competent evidence in an administrative proceeding" (Matter of Selke v New York State Comptroller, 176 AD3d 1295, 1297 [3d Dept 2019] [internal quotation marks and citation omitted]). Petitioner's remaining contentions, to the extent not specifically addressed, have been examined and found to be lacking in merit or rendered academic.
Egan Jr., J.P., Lynch, Reynolds Fitzgerald and Ceresia, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.