Matter of Downey v DiNapoli (2026 NY Slip Op 00556)

Matter of Downey v DiNapoli

2026 NY Slip Op 00556

Decided on February 5, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 5, 2026

CV-24-1846
[*1]In the Matter of Kevin Downey, Petitioner,
vThomas P. DiNapoli, as State Comptroller, Respondent.

Calendar Date:January 14, 2026

Before:Reynolds Fitzgerald, J.P., Ceresia, Fisher, McShan and Mackey, JJ.

Schwab & Gasparini, PLLC, White Plains (Victor Aqeel of counsel), for petitioner.
Letitia James, Attorney General, Albany (Dustin J. Brockner of counsel), for respondent.

Fisher, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent denying petitioner's application for performance of duty disability retirement benefits.
Petitioner, a police sergeant, filed an application for performance of duty disability retirement benefits in May 2014, alleging that he was permanently incapacitated therefrom due to injuries sustained during an incident that occurred in July 2007. Regarding the incident, petitioner alleged that during a foot pursuit of a suspect through a wooded area, he was struck in the left eye by a tree branch. Petitioner was initially treated at the scene for an injury to his left eye before going to the emergency room that same night, and he was cleared to return to full duty three days later. Petitioner ultimately retired in March 2014 and filed the instant application. The New York State and Local Police and Fire Retirement System conceded that petitioner was permanently incapacitated and could not perform his duties but denied the application, finding that his disability was not the natural and proximate result of an incident sustained in the service upon which his membership was based. Petitioner requested a hearing and redetermination, during which petitioner, his treating physician and the physician who evaluated petitioner at the request of the Retirement System appeared and testified. At the conclusion of the hearing, the Hearing Officer upheld the denial, finding that petitioner failed to demonstrate that his permanent incapacity was the natural and proximate result of the July 2007 incident. Respondent accepted the Hearing Officer's findings and conclusions, prompting this CPLR article 78 proceeding.
We confirm. "In order to be entitled to performance of duty disability retirement benefits, petitioner bore the burden of demonstrating that he was incapacitated from the performance of duty as the natural and proximate result of a disability sustained in service" (Matter of Harder v DiNapoli, 213 AD3d 1101, 1102 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Bucci v DiNapoli, 211 AD3d 1191, 1192 [3d Dept 2022]). "Where, as here, there is conflicting medical evidence, respondent is vested with the exclusive authority to weigh such evidence and credit the opinion of one medical expert over another" (Matter of Mozdziak v DiNapoli, 231 AD3d 1215, 1216 [3d Dept 2024] [internal quotation marks, brackets and citations omitted]). "Our review of respondent's determination is limited to ascertaining whether it is supported by substantial evidence" (Matter of Stefanik v Gardner, 236 AD3d 75, 78 [3d Dept 2025] [internal quotation marks, brackets and citations omitted]; see Matter of Clarke v DiNapoli, 187 AD3d 1286, 1287 [3d Dept 2020]).
The medical evidence presented in this case included testimony and medical records from Liviu Saimovici, an ophthalmologist and treating physician [*2]for petitioner. Saimovici, who examined petitioner in February 2014 and October 2015, testified that upon his initial examination, petitioner's left eye was measured with and without correction at 20/40. He opined that, although petitioner had been diagnosed by a previous treating physician with central serous retinopathy (hereinafter CSR), a condition which results in "a collection of fluid" in the macula, petitioner instead suffered from a macular scar as the result of "macular damage in his left eye" that appeared like a "scratch" in his left retina. Notably, Saimovici stated that fluid in the macula related to CSR "could become a scar" in rare circumstances. Saimovici further opined that the damage was caused by the "blunt trauma" from petitioner's July 2007 incident and that, in his medical opinion, the damage to the retina caused "swelling" and petitioner subsequently developed "the scar which is impairing his vision." Notably, Saimovici agreed that other possible causes of macular damage to petitioner's left eye included "macular degeneration, diabetic retinopathy, and in extremely rare cases, [CSR]."
On behalf of the Retirement System, Gary Turer, a board-certified ophthalmologist, conducted a medical examination of petitioner in January 2017, reviewed his medical records and the work requirements of a police sergeant and issued a report regarding his examination. Upon his examination, petitioner's left eye was measured at an uncorrected visual acuity of 20/80 and a best corrected visual acuity of 20/60. Turer noted that petitioner had previously been diagnosed with a chronic form of CSR and that the "diminished vision in his left eye is due to a macular lesion." He opined that petitioner was permanently disabled and unable to perform the duties of a police sergeant. However, Turer attributed the macular lesion to the "sequelae of [CSR]" and further noted that although "there have been cases of CSR that have been caused by trauma, it is considered a rare cause of this condition." Turer opined that, based upon a documented left eye visual acuity of 20/20 found in petitioner's medical records dated May 2014, nearly seven years after sustaining trauma to the eye, the July 2007 incident was not the "competent producing cause" of petitioner's eye condition, and his disability was accordingly not the natural and proximate result of his job duties.
The conflicting medical evidence presented a credibility issue for respondent to resolve, and the testimony of petitioner's treating physician was not entitled to any greater weight (see Matter of Stancarone v DiNapoli, 219 AD3d 1649, 1651 [3d Dept 2023]; Matter of Clarke v DiNapoli, 187 AD3d at 1288; Matter of Solarino v DiNapoli, 171 AD3d 1434, 1437 [3d Dept 2019]). Here, the Hearing Officer specifically credited the opinion of respondent's expert over petitioner's treating physician, finding that competent medical evidence supported that the July 2007 incident "was not the cause of [petitioner's] [*3]disability." "Inasmuch as the opinion of the Retirement System's expert was a rational fact-based opinion formed upon a physical examination of petitioner and a review of pertinent medical records, respondent was free to credit such opinion over that of petitioner's treating physician" (Matter of Mozdziak v DiNapoli, 231 AD3d at 1217 [internal quotation marks and citations omitted]; see Matter of Solarino v DiNapoli, 171 AD3d at 1437; Matter of Ashley v DiNapoli, 97 AD3d 1057, 1059-1060 [3d Dept 2012]; Matter of Space v DiNapoli, 96 AD3d 1226, 1227 [3d Dept 2012]; see also Matter of Lenci v DiNapoli, 210 AD3d 1224, 1227 [3d Dept 2022]). Accordingly, given that the determination denying petitioner's application is supported by substantial evidence, we find no reason to disturb it.
Reynolds Fitzgerald, J.P., Ceresia, McShan and Mackey, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.