Matter of Merante v DiNapoli (2026 NY Slip Op 00641)

Matter of Merante v DiNapoli

2026 NY Slip Op 00641

Decided on February 11, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 11, 2026

CV-24-0234
[*1]In the Matter of Rocco Merante, Petitioner,
vThomas P. DiNapoli, as State Comptroller, Respondent.

Calendar Date:November 17, 2025

Before:Garry, P.J., Clark, Aarons, McShan and Mackey, JJ.

Schwab & Gasparini, PLLC, White Plains (Warren J. Roth of counsel), for petitioner.
Letitia James, Attorney General, Albany (Kevin C. Hu of counsel), for respondent.

Clark, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent denying petitioner's applications for accidental and performance of duty disability retirement benefits.
Petitioner, a police officer, filed separate applications for accidental and performance of duty disability retirement benefits alleging that he was permanently incapacitated from the performance of his duties due to a September 2016 incident wherein he was an unrestrained passenger in a police car that struck a deer. Both applications were denied by the New York State and Local Retirement System based upon a finding that petitioner was not permanently incapacitated from the performance of his duties. Following a hearing and redetermination, a Hearing Officer upheld the denials and, upon administrative review, respondent affirmed the Hearing Officer's decision. Petitioner then commenced this CPLR article 78 proceeding to challenge respondent's determination.
As an initial procedural matter, we are unpersuaded by petitioner's argument that the determination is arbitrary and capricious or lacking in substantial evidence insofar as it was based upon the review of an incomplete record that did not include certain outstanding medical records (see CPLR 7803 [3], [4]). Petitioner's counsel had several opportunities to admit the outstanding medical records into evidence during the administrative hearing and instead relied upon his client's statement that the Retirement System had all of his records. The transcript from the hearings sets forth that petitioner's counsel never moved the medical records into evidence despite ample opportunity to do so and even after the Retirement System reminded him that they were not in evidence. In these circumstances, the Hearing Officer appropriately decided the applications on the record before it, and respondent was justified in rendering the final administrative determination based upon such record (see Matter of Levine v New York State Liq. Auth., 23 NY2d 863, 864 [1969]; Matter of Hammonds v New York State Educ. Dept., 206 AD3d 1334, 1334 [3d Dept 2022]; compare Matter of Angelino v New York State Comptroller, 176 AD3d 1376, 1381 [3d Dept 2019]; Matter of Cook v New York State Comptroller, 135 AD3d 1117, 1118-1119 [3d Dept 2016]; Matter of Danieu v DiNapoli, 77 AD3d 1152, 1154-1155 [3d Dept 2010]).
Turning to the [*2]merits of the underlying determination, " '[i]n connection with any application for accidental or performance of duty disability retirement benefits, the applicant bears the burden of proving that he or she is permanently incapacitated from the performance of his or her job duties' " (Matter of Hannon v DiNapoli, 226 AD3d 1122, 1123 [3d Dept 2024] [citation omitted], quoting Matter of Byrne v DiNapoli, 85 AD3d 1530, 1531 [3d Dept 2011]; see Matter of Graham v Gardner, 239 AD3d 1175, 1175 [3d Dept 2025]). "Where, as here, there is conflicting medical evidence, respondent is vested with the exclusive authority to weigh such evidence and credit the opinion of one medical expert over another, and our review of respondent's determination is limited to ascertaining whether it is supported by substantial evidence" (Matter of Mozdziak v DiNapoli, 231 AD3d 1215, 1216 [3d Dept 2024] [internal quotation marks, brackets and citations omitted]; see Matter of McGowan v DiNapoli, 178 AD3d 1243, 1243-1244 [3d Dept 2019], lv denied 35 NY3d 917 [2020]).
Cristian Brotea, petitioner's treating orthopedic surgeon, testified that he first examined petitioner in October 2016 for complaints involving petitioner's neck and back. According to Brotea, MRIs taken in March and May 2017 revealed a lumbar disc herniation, right side worse than left, with some compression of the S-1 nerve root, an annular fissure disc herniation at L4-5, slightly right to midline, a disc herniation at C5-6 with impingement of the nerve roots and a large, right-sided disc herniation at T6-7 with impingement of the nerve roots. Brotea opined that petitioner's injuries were consistent with his status as an unrestrained passenger in a police vehicle that collided with a deer with heavy damage to the vehicle. Brotea further testified that he was aware of "some of the duties" of a police officer, and opined that, given petitioner's injuries, he would not be able to restrain and handcuff violent suspects, perform foot pursuits, lift ambulance stretchers or perform any other heavy exertion aspects of the job. According to Brotea, petitioner's condition is permanent, and it would be "unlikely," even with surgical intervention, for petitioner to return to full duty.
Petitioner also presented the testimony of the commanding officer at petitioner's precinct when petitioner was involved in the September 2016 motor vehicle accident. He testified that the damage to the police car was "pretty extensive," requiring the same to be put out of service. He also noted that the full duties of a police officer may include violent altercations, providing security and directing traffic on roadways. Petitioner did not testify nor did his counsel put any of his medical records into evidence. However, the Retirement System admitted several exhibits that included portions of petitioner's medical records.
On behalf of the Retirement System, Gregory Galano, an orthopedic surgeon, conducted an examination of petitioner in September [*3]2018, reviewed his medical records and issued a report regarding his examination. Galano testified that, although he measured decreased ranges of motion ranging from mild to moderate in the cervical and lumbar spine, petitioner exhibited signs of suboptimal effort and symptom magnification. Galano further testified that among the additional tests he performed were a Spurling test of the cervical spine for radiculopathy in the upper extremities and a straight leg raise test of the lumbar spine for radiculopathy in the lower extremities. Galano explained that the radiculopathy tests he performed returned objective findings, whereas the range of motion tests returned subjective measurements, and that the absence of objective findings matching petitioner's subjective complaints was further evidence of symptom magnification. Consequently, according to Galano, there was no objective evidence of disability. Thereafter, with the additional support of his review of the same 2017 MRIs as Brotea, Galano diagnosed petitioner with cervical, thoracic and lumbar strains and opined that petitioner did not have a permanent disability and could return to full duty as a police officer.
In our view, although there was medical evidence that could support a contrary conclusion, Galano's rational opinion based upon his examination of petitioner and review of his medical records provides substantial evidence to support the determination that petitioner was not permanently incapacitated from performing his job duties (see Matter of Graham v Gardner, 239 AD3d at 1176; Matter of McGowan v DiNapoli, 178 AD3d at 1245; Matter of Solarino v DiNapoli, 171 AD3d 1434, 1437 [3d Dept 2019]; see also Matter of Studdert v New York State Comptroller, 163 AD3d 1343, 1346 [3d Dept 2018]) and respondent was free to credit Galano's opinion over that of petitioner's treating physician (see Matter of Mozdziak v DiNapoli, 231 AD3d at 1217; Matter of Stancarone v DiNapoli, 219 AD3d 1649, 1651 [3d Dept 2023]). Accordingly, we find no reason to disturb respondent's determination denying petitioner's applications for accidental and performance of duty disability retirement benefits.
Aarons and McShan, JJ., concur.
Garry, P.J. (dissenting).
We do not disagree that the Hearing Officer acted well within his authority at every stage of these proceedings, nor that petitioner's counsel bears primary responsibility for the state of the record. However, arbitrary and capricious review is not concerned with fault. The inquiry is whether the administrative entity's ultimate determination was rational — that is, whether it was made with a sound basis in reason and with due regard to the relevant facts (see generally Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 231 [1974]). Here, respondent rendered a final merits determination while fully aware that extensive, postapplication surgical records — directly bearing on [*4]several sites of injury — existed, had been repeatedly referenced in this proceeding, were in the possession of the New York State and Local Retirement System and had never been evaluated. Put another way, the determination being upheld here is not arbitrary because the Hearing Officer acted inappropriately; it is arbitrary because the ultimate question of permanent incapacity was resolved on a record that was universally understood to not reflect the facts and underlying medical reality of petitioner's conditions. In light of these foundational concerns as to the substantive reliability of the determination before us, albeit resulting from counsel's abysmal performance with respect to the outstanding records, we respectfully dissent.
On February 27, 2020, the parties appeared for the first hearing day. Counsel for the Retirement System informed the Hearing Officer that he had received an email from petitioner's counsel the day prior containing nearly 800 pages of haphazard additional medical records and advising that petitioner had undergone multiple surgeries to the sites of injury alleged in his applications following the independent medical examination.[FN1] Counsel for the Retirement System culled through those records and advised petitioner's counsel that operative reports for certain surgeries were still missing and, moreover, all additional records and operative reports needed to be sent to the Retirement System's disability processing unit with a request for reconsideration, if that was what was intended. Petitioner's counsel took an adjournment as of right for that purpose, confident that, upon review of the additional records, disability processing would find petitioner to be permanently incapacitated, eliminating the need for a hearing. The Hearing Officer admonished petitioner's counsel for his belated submissions, and the case was put on hold.
On October 22, 2020, the parties appeared for a second hearing day, notably pursuant to a request by petitioner's counsel to reopen the case to take the testimony of the physician who treated petitioner's neck and back conditions. That physician was ultimately unavailable for testimony, and counsel for the Retirement System reported that petitioner's counsel had still not submitted all missing reports or any written request for further consideration. To explain those failings, petitioner's counsel pointed to a variety of law office issues, the COVID-19 pandemic and, ultimately, his client, and he was again admonished for his excuses and delays, as well as the resultant cost to the State. Nevertheless, the Retirement System, endeavoring to ensure the right outcome for its member, agreed to an adjournment for cause so that petitioner's counsel could appropriately file his documents and request reconsideration. It appears that counsel emailed disability processing during that hearing, and the case was put on hold again for such reconsideration and, potentially, the opportunity for the Retirement System [*5]to reexamine petitioner or issue an addendum based on the additional records.
Before either of those things could happen, petitioner's counsel again requested that the matter be reopened for the testimony of petitioner's treating physician. At the hearing that followed on August 16, 2021, petitioner's counsel failed to explain why he requested reopening given his pending request for reconsideration, other than the fact that he had found a date that worked for the physician. Out of courtesy to the physician, and with further admonishment, the Hearing Officer took testimony, despite acknowledging that it could very well be futile. When the parties turned to admitting their records into evidence, petitioner's counsel, again concerned only with his witness' schedule, requested to admit the records after the physician's testimony. The Hearing Officer acquiesced, cautioning that any testimony premised upon documents that were not ultimately admitted into evidence would be stricken. At the end of the physician's testimony, petitioner's counsel requested an adjournment to call additional witnesses, including the surgeon who performed petitioner's knee surgery. The Retirement System then admitted its exhibits into evidence; petitioner's counsel asked to wait until the next hearing date to do the same, to see what action disability processing would take.
Prior to the next hearing date, and without any resolution of the request for reconsideration, petitioner's counsel elected to rest his case via email correspondence — having still failed to admit the subject medical records into evidence. On the next hearing day, November 2, 2022, counsel for the Retirement System moved for any testimony of petitioner's physician based upon medical records not otherwise contained in the Retirement System's exhibits to be stricken. Petitioner's counsel made a series of arguments, and accusations, in response that were all but entirely unsupported by the record, and the Hearing Officer granted the application. Petitioner's counsel then requested that the Hearing Officer instead withhold decision for written arguments on "the issue of the medical records," acknowledging that petitioner's right to due process was being implicated. The Hearing Officer declined to revisit his ruling, and the Retirement System presented its case. The Hearing Officer later issued a decision upholding the denial of petitioner's applications, finding the testimony of the Retirement System's physician regarding petitioner's neck and back injuries to be more persuasive. In the absence of medical evidence regarding petitioner's left knee, wrists or hands, those sites of injury went unaddressed. Respondent accepted the Hearing Officer's findings of fact and conclusions of law and accordingly issued a determination denying petitioner's applications. Petitioner in turn commenced this CPLR article 78 proceeding — notably still represented by the same counsel — who now argues that the Hearing Officer's "exclu[*6][sion]" of the extensive medical records discussed above was arbitrary and capricious.
The multiple and repeated errors by petitioner's counsel in the face of the consistent efforts by the Retirement System and the Hearing Officer to ensure a fair hearing for petitioner present this Court with an enigma. Ultimately, counsel's lackadaisical approach and mismanagement of petitioner's case culminated in both derailment of any request for reconsideration and the failure to offer extensive medical records into evidence. Despite multiple adjournments for this very purpose, and extended discussion of these records, petitioner's counsel rested without making the long-anticipated proffer of pertinent medical records. The frustration of the Hearing Officer in this regard is well documented in the record; we agree that counsel's failures were wholly inexplicable. Thus, the argument presented upon appeal by petitioner's counsel concerning the alleged exclusion of the subject evidence is, at best, misleading.
Nonetheless, the administrative record is clearly incomplete, and it again bears emphasizing that all were aware of the existence of the subject records and their subject matter. That incompleteness, while largely attributable to petitioner's counsel, does not right itself by that attribution. Particularly in light of the many additional surgeries to multiple sites of injury not otherwise considered, it appears entirely likely that the omitted records were so foundational to petitioner's applications as to render the determination before us analytically incomplete, and thus arbitrary and capricious (see CPLR 7803 [3]). Under these highly unusual circumstances, we would take the unusual step of remitting the matter for further proceedings.
Mackey, J., concurs.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.

Footnotes

Footnote 1: It appears that petitioner had surgery on his left knee in 2016 and 2018, surgeries on both wrists in 2018 and a right thumb surgery in 2019.